<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| LOUISE M. WILLIAMS and ELIE FEUERWERKER,<br><br>     *Plaintiffs*,<br><br>  v.<br><br>BOROUGH OF HIGHLAND PARK,<br><br>     *Defendant*. | Civil No.: 15-6879 (KSH) (CLW)<br><br><br><br>     <u>OPINION</u> |

<u>Katharine S. Hayden, U.S.D.J.</u>

Before the Court is a motion (D.E. 4) filed by defendant Borough of Highland Park (the "Borough") to dismiss the complaint (D.E. 1 ("Compl.")) filed by plaintiffs Louise M. Williams and Elie Feuerwerker. Plaintiffs are residents of the Borough who allege they have been injured financially by the Borough's sidewalk policies and practices. Specifically, they allege that a Borough ordinance requiring that residents maintain sidewalks in good repair violates their due process rights under the Fourteenth Amendment and 42 U.S.C. § 1983, as well as the New Jersey Civil Rights Act, *N.J.S.A.* 10:6-1 *et seq.* They also bring a claim for restitution and unjust enrichment for fines imposed under the offending ordinance. Though no class has been certified, plaintiffs bring their claims as a putative class action suit under Federal Rule of Civil Procedure 23 on behalf of themselves and others similarly situated within the Borough.

## I.    Factual Background

Plaintiffs allege that the Borough amended its code in 2012 to require residents to maintain sidewalks abutting their land "so as to minimize any endangerment to the public health,

safety and welfare of any individual using the sidewalks." (Compl. ¶ 7, Ex. A.) If an owner or occupant did not comply with a Borough notice to perform maintenance or repairs within 30 days, the Borough would impose a fine and perform the work, placing a lien on the land abutting the sidewalk. (Compl. ¶ 7.)

After the ordinance was passed, the Borough sent notices to residents in May and June of 2012, advising that their sidewalks were unsafe, in violation of the ordinance, and must be replaced or repaired. (*Id.* ¶¶ 9-11; D.E. 10-1, Ex. D.) The notice stated that failure to make the repairs would result in a summons being issued, and referred to the ordinance. (D.E. 10-1, Ex. D.) In all, approximately 1,240 violation notices were sent to residents. (Compl. ¶ 29.) Neither the ordinance nor the notices advised what standard was used to determine that a sidewalk needed to be repaired or provided a mechanism to challenge that determination. (*Id.* ¶¶ 8, 14-15.) Plaintiffs allege that the Borough has asserted that different sidewalk elevations—varying from one-half of an inch to three-quarters of an inch—constitute a violation, though neither measurement was ever set forth in the ordinance. (*Id.* ¶¶ 24-26.)

In response to complaints about the notices, the Borough Mayor sent a letter to Borough residents in July 2012, describing an alternative to residents independently paying a contractor to replace the sidewalks on their property: the Borough Sidewalk Improvement Program, through which "the Borough would make interim payments to a contractor and the resident would repay the Borough" either in full or in five installments. (*Id.* ¶ 16.) Until the Borough was fully reimbursed, it would place a lien on the property. (*Id.*) Plaintiffs represent that the typical replacement cost for one sidewalk segment was at least $300 and that multiple slabs had to be replaced at most properties. (*Id.* ¶ 19.)

Feuerwerker opted to take part in the Borough Sidewalk Improvement Program.  (*Id.* ¶ 23.)  He received an invoice in June 2015 and has made at least one installment payment.  (*Id.* ¶¶ 34-35.)  Williams paid a contractor directly to replace her sidewalk and paid fines and court costs for violations of the ordinance prior to the replacement.  (*Id.* ¶¶ 21-22.)

The complaint states that in 2014, four residents brought suit against the Borough in state court seeking to enjoin enforcement of the ordinance, and Judge Travis Francis granted a preliminary injunction on September 12, 2014.  (*Id.* ¶ 31.)  Shortly thereafter, in November 2014, the Borough amended the ordinance and adopted a six-month moratorium on its enforcement.[1] (*Id.* ¶¶ 32-33.)  The Borough's opposition gives more detail about the prior state court proceedings and attaches a copy of the court documents.[2]  (D.E. 10-1.)  Four Borough residents, not including Williams and Feuerwerker, filed a complaint challenging the ordinance on August 11, 2014.  (D.E. 4-2, Ex. A.)  Concurrently, the four residents filed an order to show cause seeking an injunction and a declaration that the Borough's enforcement of the ordinance was invalid both facially and as applied.   (D.E. 4-2, Ex. B.)  On September 12, 2014, Judge Francis found that the ordinance was vague and temporarily restrained enforcement pending a hearing on final injunctive relief.  (D.E. 4-2, Ex. C-E.)  Thereafter, the four residents moved to amend their complaint and name Williams as an additional plaintiff, but they withdrew the motion on January 2, 2015.  (D.E. 4-2, Ex. G, I.)  With consent of the parties, the state court dismissed the initial complaint "with prejudice on grounds of mootness" on February 16, 2015.  (D.E. 4-2, Ex J.)

---

[1] Plaintiffs do not challenge the current version of the ordinance.

[2] In evaluating motion to dismiss, a court "may consider documents that are attached to or submitted with the complaint and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal quotation marks omitted).  This applies with equal force to the violation notice plaintiffs received, which was not attached to the complaint, but which they provided as part of their opposition to this motion.  (D.E. 10-1, Ex. D.)

In reviewing subsequent motions for attorneys' fees, Judge Francis made numerous statements on the record referring to his own prior findings.  On October 23, 2014, Judge Francis denied an application for attorneys' fees as premature, saying:

> There has been no determination by this Court or a finder of fact that there has been a violation by the defendant of . . . 42 U.S.C. 1983. . . .  [The four residents'] preliminary injunctive relief on behalf of Highland Park's residents was not a vindication of the merits of [the] case.  The Court specifically considered the state statute that was being challenged, and the Court concluded that the same was constitutional.  And this Court also concluded that the ordinance was constitutional.  What the Court did find, however, was that the—the application of the statute was vague, based on the inconsistent notices that were being provided to the citizens with regard to whether or not their sidewalks were in violation of the ordinance.

(D.E. 4-2 Ex. F at 3-4.)  On February 6, 2015, Judge Francis stated that the court's granting of preliminary injunctive relief to residents of Highland Park

> was not a vindication on the merits of [the] case.  This Court specifically considered the state statute [the residents] challenged as being unconstitutional and the ordinance's constitutionality and found the both—found both to be constitutional.
>
> The Court did find that with respect to the application of the statute, the same was vague based on a lack of proper notice.  The borough was not required to stop its enforcement of the ordinance, which this Court found well-settled and based on the underlying state statute.
>
> The Court found that the borough did not have a consistent standard, and when citizens would call one place, they were told a certain amount of unevenness in the pavement has allowed in the sidewalk.  When the town noticed their citizens, they stated a different level or amount of unevenness was allowed in the sidewalk, and this was done twice.  There was considerable discretion in the hands of the borough's code enforcement official, and nothing guiding the people of the borough as to—as to how much unevenness was allowed in the sidewalks.  The Court sought consistency from the borough, and the borough was not able to point to a consistent standard.
>
> . . .

4

> The ordinance was always constitutional. The exact
> language of the ordinance is non-controversial. . . . Plaintiffs sought
> a determination from this Court that the ordinance on its face was
> unconstitutional. Plaintiff did not prevail in that application, and it
> was denied.

(D.E. 4-2 Ex. K at 21-23.)

Williams and Feuerwerker filed this action on September 16, 2015, and the Borough filed

this motion to dismiss on November 16, 2015. The matter has been fully briefed.

## II.    Subject Matter Jurisdiction under the *Rooker-Feldman* doctrine

The Borough argues that the Court should dismiss plaintiffs' complaint pursuant to

Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction under the *Rooker-*

*Feldman* doctrine. The Supreme Court has read 29 U.S.C. § 1257 as granting it exclusive

jurisdiction over appeals from final state-court judgments—that is, "under what has come to be

known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising

appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463

(2006) (citing *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Tr.*

*Co.*, 263 U.S. 413, 416 (1923)). The doctrine is narrow, "confined to 'cases brought by state-

court losers complaining of injuries caused by state-court judgments rendered before the district

court proceedings commenced and inviting district court review and rejection of those

judgments.'" *Id.* at 464 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280,

284 (2005)).

There are four requirements that must be met for the doctrine to apply: "(1) the federal

plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court

judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the

plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining*

5

& Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (quoting Exxon Mobil, 544 U.S. at 284).  The Third Circuit has stated that the second and fourth requirements are the most instructive when examining a federal complaint involving an injury that is related to a state-court proceeding.  Id.  The second requirement can also be characterized as a requirement that the source of the plaintiff's injury be the state court judgment and not the defendant's actions, which a state court declined to remedy.  Id. at 166-68.  Even if the state-court judgment caused the injury, the fourth requirement demands that plaintiff be seeking to reverse or modify that judgment through a determination that the state tribunal reached a result not in accordance with the law.  Id. at 168-69.  Courts must distinguish such appellate review from cases where a party is merely litigating a matter that was previously heard in a state court.  Id. at 166.  If there was a prior state court proceeding of the matter, "as long as the 'federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . then there is jurisdiction[,] and state law determines whether the defendant prevails under principles of preclusion.'"  Id. (quoting Exxon Mobil, 544 U.S. at 293 (internal quotations omitted)).

The Borough focuses its argument on the fact that this matter and the state court proceeding are "inextricably intertwined."  See id. at 169-70.  The Borough argues that the state court found that both the ordinance and its enabling statute were constitutional and that the Borough had not committed a § 1983 violation by enacting or enforcing the ordinance.  The Borough asserts that a finding in favor of Williams and Feuerwerker in this Court would effectively review and negate that finding by the state court.  However, the Court may not reach this aspect of the analysis because the first requirement of the Rooker-Feldman doctrine is missing:  neither Williams nor Feuerwerker were parties to the state suit.  The Supreme Court

6

has stated that "*Rooker-Feldman* does not bar actions by a nonparty to the earlier state suit."
*Lance*, 546 U.S. at 464.  The Borough presumably believes that there is identity of plaintiffs in
the state and federal proceedings because the four borough residents in the state court case
moved to amend their complaint on November 14, 2014, to include Williams as a plaintiff.
However, the motion to amend was withdrawn on January 2, 2015, and the amended complaint
was never filed, meaning Williams was never a party to the prior state court litigation.[3]
Accordingly, the *Rooker-Feldman* doctrine does not withhold this Court's jurisdiction over this
matter.

### III.    Preclusion

When the *Rooker-Feldman* doctrine does not apply, "[d[isposition of the federal action,
once the state-court adjudication is complete, [is] governed by preclusion law."  *Great W.*
*Mining & Mineral Co.*, 615 F.3d at 170 (citing *Exxon Mobil*, 544 U.S. at 293).  A district court
must "'give the same preclusive effect to a state-court judgment as another court of that State
would give.'"  *Id.* (quoting *Exxon Mobil*, 544 U.S. at 293 (internal quotation marks omitted)); *see*
*also Chrystal v. N.J. Dep't of Law & Pub. Safety*, 535 Fed. Appx. 120, 122-23 (3d Cir. 2013)
(federal court must give state court judgment preclusive effect under the Full Faith and Credit
Clause of the Federal Constitution).  Jurisdictional issues such as the *Rooker-Feldman* doctrine
are distinct from the inquiry into "whether claim preclusion (res judicata) or issue preclusion
(collateral estoppel) defeats the federal suit."  *Great W. Mining & Mineral Co.*, 615 F.3d at 170.
The Borough argues that New Jersey state courts would give preclusive effect to the prior state

---

[3] Though it need not reach the remaining elements, the Court notes that the second requirement of the *Rooker-Feldman* doctrine is also lacking because plaintiffs complain of injuries caused by the enforcement of the ordinance, not by any state court ruling.  *Great W. Mining & Mineral Co.*, 615 F.3d at 166 (stating requirement that "the plaintiff complain[s] of injuries caused by [the] state-court judgments" (internal quotation marks omitted)).

court proceeding under the entire controversy doctrine and the doctrine of mootness and that this Court should do the same.

### a.  Entire Controversy Doctrine

Stemming from the underlying principles of claim preclusion or res judicata, New Jersey's entire controversy doctrine requires that, whenever possible, all aspects of a legal controversy should be adjudicated in a single action.  *Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015); *Olds v. Donnelly*, 150 N.J. 424, 431-32 (N.J. 1997); *Prevratil v. Mohr*, 145 N.J. 180, 186-87 (1996); *Cogdell v. Hosp. Ctr. at Orange*, 116 N.J. 7, 15 (1989).  The doctrine is not only present in case law, but it is also set forth in the court rules and the New Jersey state constitution. *See* N.J. CONST. art. VI, § 3, para. 4 ("[L]egal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined."); N.J. Ct. R. 4:30A ("Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine").  Its purposes "'are threefold:  (1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay.'"  *Wadeer v. N.J. Mfrs. Ins. Co.*, 220 N.J. 591, 605 (2015) (quoting *DiTrolio v. Antiles*, 142 N.J. 253, 267 (1995)).

The doctrine is an affirmative defense, *Rycolene Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997), and "applies in federal courts 'when there was a previous state-court action involving the same transaction.'"  *Ricketti*, 775 F.3d at 613 (quoting *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir. 1991).  However, out of fairness to a plaintiff's ability to litigate his or her claims, the doctrine does not apply to unaccrued or unknown claims. *Wadeer*, 220 N.J. at 606.  By the same logic, the doctrine generally does not apply to bar claims

by individuals who were not a party to the prior action.  *See Hobart Bros. v. Nat'l Union Fire Ins.*, 354 N.J. Super. 229, 242 (N.J. App. Div.) ("Because a violation of the entire controversy doctrine may result in the preclusion of a claim, a court must consider whether the party against whom the doctrine is sought to be invoked has had a fair and reasonable opportunity to litigate that claim."), *certif. denied* 175 N.J. 170 (2002).

The Borough argues that plaintiffs elevate form over substance and that Williams is the equivalent of a party in the state court action because the plaintiffs there moved to amend their complaint to include Williams and, in doing so, included her as an existing plaintiff in the caption and text of the motion papers and in the proposed amended complaint.  The Borough asserts that Williams had involvement in the withdrawn motion and was essentially in privity with the state-court plaintiffs because there was "substantial identity between the incentives of the earlier party and those of the party whom preclusion is asserted against."  (D.E. 13 at 11, citing *Mullarkey v. Tamboer*, 536 F.3d 215, 225 (3d Cir. 2008) (discussing privity in context of res judicata; quoting *In re Rabinowitz*, 2011 WL 6749068 (Bankr. D.N.J. Dec. 21, 2011).)

On the contrary, it is the Borough that elevates form over substance in this argument.  It does not matter where Williams's name appeared on the motion papers seeking to add her as a party.  The fact remains that the motion was withdrawn and that Williams was never a party to that litigation.  Further, the Borough's privity argument ignores the caution that accompanies the entire controversy doctrine and that requires that courts look to whether the party to be precluded "has had a fair and reasonable opportunity to litigate [his or her] claim."  *Hobart Bros.*, 354 N.J. Super. at 242.  There is no indication in the prior litigation's history that Williams's claims were actually litigated or that she was part of the amicable resolution of the case.  Nor is there any

indication that Williams and Feuerwerker considered joining the state court litigation, but withheld their claims for strategic reasons or to obtain two bites at the apple. *Id.* at 241.

The entire controversy doctrine is neither applicable nor equitable here.

### b. Mootness and Res Judicata

"Article III, § 2 of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" an offshoot of which is the mootness doctrine, which requires that "an actual controversy . . . be extant at all stages of review." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013) (internal quotation marks omitted). The Borough argues that this controversy is moot because the prior state court action was dismissed with prejudice on mootness grounds after the ordinance was amended. Though characterized as mootness, this position effectively seeks to preclude plaintiffs' claims in this Court under principles of res judicata, arguing that they are substantively the same as the claims in the prior state court litigation and, therefore, barred by the final judgment in that case.

Res judicata, also known as claim preclusion, *Duhaney v. Attorney General of the United States*, 621 F.3d 340, 347 (3d Cir. 2010), "'refers broadly to the common-law doctrine barring relitigation of claims or issues that have already been adjudicated.'" *Tarus v. Borough of Pine Hill*, 189 N.J. 497, 520 (2007) (quoting *Velasquez v. Franz*, 123 N.J. 498, 505 (1991)). "The doctrine of claim preclusion (the here-relevant aspect of res judicata) prohibits 'successive litigation of the very same claim' by the same parties.'" *Whole Woman's Health v. Hellerstedt*, 579 U.S. __, __ (2016) (slip op. at 11) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). Res judicata requires "'(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" *Duhaney*, 621 F.3d at 347 (quoting *In re Mullarkey* 536 F.3d 215, 225 (3d Cir. 2008)). Although a dismissal with prejudice such as the one in the prior state court litigation brought by four

Borough residents constitutes an adjudication on the merits for purposes of res judicata, *Velasquez*, 123 N.J. at 507, the parties in the state court litigation are not the same as the parties before this Court, nor are they in privity.[4]   The Borough's argument fails here too.

## IV.   Statute of Limitations

The Borough next argues that plaintiffs' § 1983 claims are barred by the statute of limitations.  *See Robinson v. Johnson*, 313 F.3d 128, 135 (explaining Third Circuit rule permitting statute of limitations to be raised via Rule 12(b)(6) motion "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." (internal quotation marks omitted)).  42 U.S.C. § 1983 does not have specific statutory language regarding the applicable statute of limitations.  The Supreme Court has stated that in a civil action for deprivation of one's rights under § 1983, state law governs the appropriate statute of limitations period and tolling, while federal law governs accrual.  *See Wallace v. Keto*, 549 U.S. 384, 387-88 (2007).  Emphasizing the need for uniformity, certainty, and minimization of unnecessary litigation, the Supreme Court held that § 1983 claims are best characterized as personal injury actions for statute of limitations purposes.  *Id.* at 388.  The parties agree that in New Jersey, the applicable statute of limitations is two years.  *See N.J.S.A.* 2A:14-2; *Cito v. Bridgewater Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989).

---

[4] Given the fact that Williams and Feuerwerker did not have the opportunity to pursue their claims in the prior state court litigation, the Court finds the Third Circuit's comment in *Bruszewski v. United States*, 181 F.2d 419, 422 n.6 (3d Cir. 1950) useful:

> the question of who is concluded by a judgment has been obscured by the use of the words 'privity' and 'privies', which in their precise meaning in law are scarcely determinative always of who is and who is not bound by a judgment. Courts have striven sometimes to give effect to the general doctrine that a judgment is only binding between parties and privies by extending the significance of the word 'privies' to include relationships not originally embraced in it, whereas the true reason for holding the issues res judicata does not necessarily depend upon privity, but on the policy of the law to end litigation by preventing a party who has had one fair trial of a question of fact from again drawing it into controversy.

Federal law provides that a § 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Genty v. Resolution Tr. Corp.*, 937 F.2d 899, 919 (3d Cir. 1991) (§ 1983 claim began to accrue when plaintiffs first learned of the hazardous nature of nearby landfill). The Third Circuit has specified that

> "[a]ccrual is the occurrence of damages caused by a wrongful act—when a plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief. As the Court in *Wallace* explained, the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages."

*In re Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 860-61 (3d Cir. 2014) (holding that arrestee's claim that state improperly seized property accrued by the time arrestee filed answer in state's forfeiture action) (quoting *Dique v. N.J. State Police*, 603 F.3d 181, 185-86 (3d Cir. 2010)) (internal citations and quotation marks omitted).

This matter was filed on September 16, 2015. (D.E. 1.) Therefore, to avoid being time-barred, plaintiffs' § 1983 claims must have accrued on or after September 16, 2013. *See* § 2A:14-1; *Cito*, 892 F.2d at 25. The Borough argues that both the facial and as applied challenges to the ordinance are barred because the statute of limitations began to run either when the ordinance was adopted on March 6, 2012 (requiring that an action be filed by March 6, 2014), or when Borough residents were sent notices advising that their sidewalks violated the ordinance "in or about May and June 2012" (requiring that an action be filed by May or June of 2014). (Compl. ¶ 10.) Plaintiffs do not address a facial challenge in their opposition papers[5] and argue only that the statute of limitations did not begin to run until the Borough applied the ordinances to them and they knew how they would "ultimately be affected." (D.E. 12 at 22.) Williams

---

[5] *See Silver Enters., Inc. v. Twp. Of Freehold*, 2008 WL 4068156 (D.N.J. Aug. 22, 2008) (Pisano, J.) (where "claims are based on facial challenges to an ordinance, the claims accrue on the date the ordinance is passed").

contends that this occurred when the Borough issued a summons and levied fines and court costs because she had failed to fix her sidewalk (summer of 2014, permitting her to file suit by summer 2016); Feuerwerker asserts that this occurred when the Borough notified him that it was demanding payment under the pre-amendment Ordinance by sending an invoice and attaching a lien to his property until payment was made in full (June 2015, permitting him to file by June 2017). (*See* D.E. 12 at 20-21; Compl. ¶ 34.)

Plaintiffs' claims that they were "not aware of the ultimate effect of the Ordinance" until they began payment or were haled into court are not persuasive. (D.E. 12 at 22.) The standard for when a claim begins to accrue looks to when a plaintiff "[knew] or ha[d] reason to know of the injury which is the basis of the" claim. *Genty*, 937 F.2d at 919. Plaintiffs allege that they each received a notice from the Borough in May and June of 2012, advising that their sidewalks were in violation of the ordinance. (Compl. ¶¶ 9-11.) That notice provided a clear indication of the injury to plaintiffs—that a determination had been made that their sidewalks were not in compliance with the Borough's ordinance and that they would have to pay to replace their sidewalks or be subject to summons. The notices stated:

> Your public sidewalk was inspected today and found to be in an unsafe condition. *You have 60 days to obtain a Zoning Permit and to repair the public sidewalk.* Sidewalk slabs maybe[sic] lifted and reset or poured, leveling agents will not be allowed. *Failure to make the required repairs will result in summons to be issued.* We appreciate your cooperation in helping to keep Highland Park a safe place to live.
>
> Ordinance No. 941-Care, Upkeep & Maintenance of Sidewalks in the Borough of Highland Park.

(D.E. 10-1, Ex. D (emphasis supplied)).  Reinforcing this, the ordinance explicitly sets forth the repair requirement, payment options, and the associated penalties for failure to comply once a notice has been received:

§ 368-16.  Notice.
Whenever an owner or occupant of such lands fails to maintain and repair the sidewalk and curb abutting said owner's or occupant's land, or permits them to deteriorate into such condition that the safety of the public is impaired, written notice shall be given to the owner or occupant directing said owner or occupant to perform maintenance or repairs within 30 days from the date of service of the notice. . . .

§ 368-17.  Procedure when owner fails to act.
A.    If the owner or occupant does not comply with the requirements of the notice described in § 368-16, then the Public Works Department of the Borough may, upon filing due proof of service of publication of such notice with the appropriate department of the Borough, cause the required work to be done and paid for out of the Borough funds available for that purpose.

B.    The cost of such work shall be certified by the Public Works Department to the Tax Collector of the Borough.

C.    Upon filing of the certificate, the amount of the cost of such work shall be and become a lien upon the abutting lands in front of which such work was done to the same extent that assessments for local improvements are liens in the Borough, and shall be collected in the manner provided by law for the collection of such other assessments, and shall bear interest at the same rate.
. . .

§ 368-18.  Violations and Penalties.
Any person who shall violate any provision of this article shall, upon conviction thereof, be punished by a fine of not less than $50 nor to exceed the penalty established by Chapter 1, General Provisions, Article III, General Penalty.  A prosecution under this section may be maintained whether or not the Borough elects to proceed as authorized by § 368-17.

(Compl. Ex. A at §§ 368-16, 368-17.)  Plaintiffs did not need to wait until they were sent an invoice from the opt-in Borough program or until a summons was issued for failure to comply with the ordinance in order to (1) have a cause of action to challenge the ordinance and (2) know of their injury.  *See Lagano*, 769 F.3d at 860-61; *Genty*, 937 F.2d at 919.  Rather, plaintiffs' § 1983 claims allege a violation of their due process rights because the ordinance was vague as to how off their sidewalks had to be and thus prevented them from knowing whether they could challenge a Borough determination that they were non-compliant.  (Compl. ¶¶ 8, 15, 24-26, 46-48.)  This vagueness was apparent at the time the ordinance was enacted, and its application, and creation of an injury, to plaintiffs was known when they received the notices from the Borough.

While they may not have known the specific amount it would cost to replace the offending sidewalk blocks, they knew from the notices in May or June 2012, that they were in violation of the ordinance, and they knew from the plain language of the public ordinance that there would be an associated cost to them.  Consequently, upon learning that their sidewalks were in violation of the Borough's ordinance, plaintiffs knew of, and could have asserted a claim for damages related to, their injury of having to pay to repair their sidewalk or suffer a lien placed on their property.  *See Lagano*, 769 F.3d at 860-61; *Genty*, 937 F.2d at 919; *see also Elliot Reihner Siedzikowski & Egan, P.C. v. Pa. Emps. Ben. Tr. Fund*, 29 F. Appx. 838, 840-41 (3d Cir. 2002) (law firm's § 1983 action accrued when client terminated it on basis of political interests and viable claim existed, not when firm experienced specific financial harm three years later when client withheld earned contingent fee from a settlement).

Plaintiffs also argue that Feuerwerker did not realize the Borough would seek to enforce the pre-amendment ordinance after enacting the amendment.  They infer that Feuerwerker did not know he had a claim to challenge application of the pre-amendment ordinance to him until

15

after he received the invoice in 2015.  This argument is unavailing.  Since Feuerwerker knew of his claim to challenge the ordinance when he received the notice of violation, his assertions are equivalent to saying the statute of limitations should be tolled from the time of the amendment until he received the first invoice.  However, the statute of limitations had already run on Feuerwerker's claim (in May or June of 2014—two years after he received the notice of violation) by the time the Borough enacted the amended ordinance in November 2014.

Plaintiffs primarily rely on a New Jersey Superior Court Appellate Division case in which several Hoboken tenants sued their landlords for charging rent in excess of what was permitted by local rent control ordinances; the landlords then sued the municipality, challenging the ordinance's constitutionality via a § 1983 claim.  *Heyert v. Taddese*, 431 N.J. Super. 388, 404 (App. Div. 2013).  The Appellate Division affirmed dismissal of the landlords' claims as time-barred, holding that they began to accrue on the day the landlords received a letter from the municipality informing them of the legal base rent calculation[6] and how it affected them.  *Id.* at 434-35.  This case does not support plaintiffs' argument.  Rather, it holds that the landlords' claims accrued when they received a letter with the base-rent amount because that letter was the trigger that informed the landlords that they "were subject to the rent control ordinance."  *Id.*  So too here, plaintiffs' claims began to accrue when they received the notices indicating that they were in violation of the sidewalk ordinance and would therefore be subject to its remaining provisions regarding repair and enforcement.  That notice date in May or June of 2012, indicates that the statute of limitations ran on the § 1983 claims in 2014, and did not extend into September 2015, when these claims were brought.  These claims are therefore time-barred.

---

[6] The Hoboken ordinance controls rents at a base level; a tenant may request a legal rent calculation from the city, and excess rents charged by a landlord in violation of the Ordinance must be returned to the tenant.  *Id.* at 423.

## V.      Supplemental Jurisdiction Over State-Law Claims

Where a District Court does not have original jurisdiction over a particular claim, it may nevertheless have supplemental jurisdiction if that claim is part of the same case or controversy from which a federal claim arose.  28 U.S.C. § 1367(a).  A court may decline to exercise supplemental jurisdiction if the court "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The decision to exercise supplemental jurisdiction is within a district court's discretion.  *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997); *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 (3d Cir. 1999).

Insofar as their federal § 1983 claims are dismissed, plaintiffs' only remaining claims in this action are based on state law.  The Court declines to exercise supplemental jurisdiction, *see* 28 U.S.C. § 1367(c)(3), noting that at least one of the state claims may not be vulnerable to dismissal on the same grounds that defeated the federal claims.  *See Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 805 F.3d 98, 112 (3d Cir. 2015) (because district court correctly dismissed all federal claims over which it possessed original jurisdiction, it was not an abuse of discretion to decline to exercise supplemental jurisdiction over state-law negligence claim).

## VI.      Conclusion

For the reasons discussed above, the Court finds that plaintiffs' § 1983 claims are barred by the applicable two-year statute of limitations and declines to exercise supplemental jurisdiction over the remaining state-law claims.  Because the Court has determined that plaintiffs' § 1983 claims are time-barred, it need not address the Borough's arguments that those claims are insufficient as a matter of law.  An appropriate order will be entered.

s/ Katharine S. Hayden_____
Katharine S. Hayden, U.S.D.J.

June 29, 2016